[S. F. No. 21108. In Bank. Oct. 24, 1962.]

BEN ROSNER, Plaintiff and Appellant, v. EDEN TOWNSHIP HOSPITAL DISTRICT et al., Defendants and Respondents.

Robert R. Elledge and Harry Gonick for Plaintiff and Appellant.

J. W. Moroney for Defendants and Respondents.

Peart, Baraty & Hassard, Howard Hassard, Musick, Peeler & Garrett and James E. Ludlam as Amici Curiae on behalf of Defendants and Respondents.

GIBSON, C. J.—Dr. Rosner, a physician and surgeon who specializes in thoracic surgery and is licensed to practice in California, appeals from a judgment denying his petition for a writ of mandate to compel his admission to membership on the medical staff of Eden Hospital, which is maintained by the Eden Township Hospital District, a governmental entity functioning under The Local Hospital District Law. (Health & Saf. Code, §§ 32000 et seq.)

The board of directors of Eden Township Hospital District based its exclusion of Dr. Rosner on the grounds that he was "not temperamentally suitable for hospital staff practice," that he was not worthy in professional ethics, and that he was not worthy in character. It was stipulated that "moral character" and "competence" with respect to "education, skill, and experience" were not in issue. In view of this

stipulation the determination of unworthiness of character was outside the issues; moreover, it finds no support in the evidence.

With respect to temperamental suitability, the board found that Dr. Rosner was "unable to get along with" the chief of surgery at City of Hope Hospital, had "unpleasantries" at Patton State Hospital, was "unable to get along at" Bella Vista Hospital, had "trouble" or was "unable to get along with" anesthesiologists at two other hospitals, had disputes with his superiors at Corona Naval Hospital, and was "unable to get along with" the medical staff at Levine Hospital of Hayward.

Dr. Rosner had been accorded privileges in approximately 40 hospitals, and the record shows that in several of the hospitals there was friction resulting from disagreements as to treatment of patients, criticisms made by him to hospital officials of certain personnel and practices, or misunderstandings relating to his position and powers. Insofar as the merits of the controversies occurring at those hospitals can be determined from the record before us, Dr. Rosner appears in a more favorable light than the other medical personnel involved.

The evidence relating to the Levine Hospital, where he was employed immediately prior to applying for membership at Eden Hospital, may be summarized as follows: The Levine Hospital is owned by Drs. Samuel and Julius Levine, the latter of whom was also at one time chairman of the board of directors of Eden Hospital. About six months after Dr. Rosner came to Levine Hospital he told Dr. Samuel Levine that a nurse-anesthetist who had assisted him in an operation was incompetent, and Dr. Levine replied that she was highly recommended. Two days later a baby died as a result of an anesthetic given by the nurse, and Dr. Rosner stated to the Levines that the surgeon was responsible because he was in charge of the operation and that the Levines were also responsible because they had been informed that the nurse was incompetent. Subsequently Dr. Rosner, in reviewing the record of the operation, said to one of the Levines that the record "on its face" showed malpractice.

On another occasion there was an argument when Dr. Samuel Levine stated that it was too late to do anything for a patient who had suffered a gunshot wound and Dr. Rosner insisted that the patient be taken to the operating room and efforts made to save him. Dr. Rosner prevailed, and the pa-

tient survived and testified at the hearing concerning the argument.

Shortly after these occurrences, Dr. Rosner was told by Dr. Julius Levine that he would be "blocked" in the medical society and all the hospitals in the community.

 The bylaws and regulations of the medical staff, adopted by the staff and approved by the board of directors, provide that patients in the hospital may be treated only by members of the staff, that an applicant for membership shall submit proof of worthiness of character, excellence of reputation as to professional ethics, and general suitability for hospital practice, and that the credentials committee in investigating the applicant shall determine his "characteristics of cooperation, apparent ability to get along with others, and general qualifications of personality which would insure in the opinion of the committee, that the applicant would be temperamentally and psychologically suited for cooperative staff hospital functions with other members of the Medical Staff and with other hospital personnel."

Section 32128 of the Health and Safety Code provides: "The rules of the hospital, established by the board of directors pursuant to this article, shall include: 1. Provision for the organization of physicians and surgeons and dentists licensed to practice in this State who are permitted to practice in the hospital into a formal medical staff, with appropriate officers and by-laws and with staff appointments on an annual basis; 2. *Provision that membership on the medical staff shall be restricted to physicians and surgeons competent in their respective fields, worthy in character and in professional ethics,* . . . [emphasis added]; 3. Provision that the medical staff shall be self-governing with respect to the professional work performed in the hospital . . .; 4. Provision that accurate and complete medical records be prepared and maintained for all patients (medical records to include identification data, personal and family history, . . . and such other matters as the medical staff shall determine); and, 5. Such limitations with respect to the practice of medicine and surgery in the hospital as the board of directors may find to be in the best interests of the public health and welfare; provided, that no duly licensed physician and surgeon shall be excluded from staff membership solely because he be licensed by one or the other of the boards mentioned in Section 2005 of the Business and Professions Code.[1]

---

[1] Section 2005 of the Business and Professions Code refers to the Board of Medical Examiners and the Board of Osteopathic Examiners.

"Said rules of the hospital shall, insofar as consistent herewith, be in accord with and contain, minimum standards not less than the rules and standards of private or voluntary hospitals operating within the district."

The code section does not refer to general suitability for hospital practice as a condition to membership in a medical staff, and such a requirement does not come within the provision of subdivision 2 that physicians and surgeons must be "competent in their respective fields." The quoted term refers only to the ability of doctors to perform the medical and surgical treatments and diagnoses in connection with which they seek to use the hospital; for example, whether a doctor seeking privileges with respect to thoracic surgery is competent to engage in such surgery. Subdivision 2 does not contain any language authorizing the board to adopt standards of fitness in addition to those enumerated therein.

Nor does subdivision 5 of section 32128 authorize the board to adopt a standard of suitability for hospital practice as a condition for admission to the medical staff. Each of the first four subdivisions of the section relates to a different matter. The language of subdivision 5 authorizing the board to adopt limitations on the "practice of medicine and surgery in the hospital" relates to a fifth subject, namely, the regulation by the board of the practice of medicine and surgery in the hospital by doctors admitted to staff membership. The quoted language is not to be construed as permitting the board to adopt additional requirements as to the subject matters dealt with in the four preceding subdivisions and does not relate to admission to staff membership, the subject dealt with in subdivision 2. Where the Legislature has intended to permit the adoption of supplemental requirements with respect to a subject dealt with in the first four subdivisions, it has expressly said so, as is shown by subdivision 4, which specifies the information to be included in medical records and contains an express provision that additional information may be required.

The fact that subdivision 5 is followed by a proviso prohibiting exclusion of a doctor from staff membership because of the type of license he holds does not militate against this construction of the subdivision. The proviso is not part of subdivision 5 but is a separate provision which limits any subdivision of the section to which its terms can be applied. Although the language of the proviso is directed toward the exclusion of doctors from staff membership (the subject dealt

with in subdivision 2), the general purpose of the proviso is broader, i.e., the prevention of discrimination against osteopaths with respect to hospital practice. Making the proviso part of subdivision 2 would not prevent discrimination against osteopaths by means of a regulation under subdivision 5 prohibiting the practice of osteopathy in the hospital. The position of the *proviso* after subdivision 5 does not show that the *subdivision* relates to membership on the medical staff but makes it clear that discrimination by a regulation under that subdivision is also prohibited.

The refusal of access to a district hospital could, as a practical matter, have the effect of denying to a licensed doctor qualified to practice in California the right to fully exercise his profession. (See *Wyatt* v. *Tahoe Forest Hosp. Dist.,* 174 Cal.App.2d 709, 715 [345 P.2d 93].) The fact that a doctor, due to criticisms made by him relating to treatment of patients or hospital practices, has been "unable to get along with" some doctors or hospital personnel is not a sufficient ground to exclude him from the use of hospitals. Obviously physicians will not always agree as to the proper treatment for a patient or as to the proper practices in a hospital.

The goal of providing high standards of medical care requires that physicians be permitted to assert their views when they feel that treatment of patients is improper or that negligent hospital practices are being followed. Considerations of harmony in the hospital must give way where the welfare of patients is involved, and a physician by making his objections known, whether or not tactfully done, should not be required to risk his right to practice medicine.

Moreover, a hospital district should not be permitted to adopt standards for the exclusion of doctors from the use of its hospital which are so vague and ambiguous as to provide a substantial danger of arbitrary discrimination in their application. In asserting their views as to proper treatment and hospital practices, many physicians will become involved in a certain amount of dispute and friction, and a determination that such common occurrences have more than their usual significance and show temperamental unsuitability for hospital practice of one of the doctors is of necessity highly conjectural. In these circumstances there is a danger that the requirement of temperamental suitability will be applied as a subterfuge where considerations having no relevance to fitness are present. It may be noted that Dr. Rosner opposed election to the board of directors of a slate of candidates endorsed by members of

the medical staff and that he has apparently testified for plaintiffs in malpractice cases.

The determination of the board that Dr. Rosner was unworthy in professional ethics was based on findings as to his conduct in the hearings, namely, that in his testimony he discussed medical and surgical problems of other doctors, going into needless detail on surgical procedures, and that he misrepresented the nature and extent of his prior hospital experience by speaking of harmonious relations at 23 hospitals when his experience at these hospitals was of a minimal nature. The only medical and surgical problems and procedures discussed by Dr. Rosner were those which led to friction with other doctors, and his testimony was in response to questions asked or in explanation of matters raised by the board's attorney. The finding as to the misrepresentation is of doubtful validity because the fact that Dr. Rosner's experience at the 23 hospitals was minimal does not indicate an absence of harmony. In any event there is no evidence that he misrepresented the nature or extent of his experience at the hospitals.

The judgment is reversed with directions to issue a writ of mandate compelling the board to admit Dr. Rosner to membership on the medical staff.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Tobriner, J., concurred.