W. Thomas McELHINNEY, Appellant,

v.

**WILLIAM BOOTH MEMORIAL HOSPITAL et al., Appellees.**

Supreme Court of Kentucky.

July 30, 1976.

Rehearing Denied Jan. 14, 1977.

James L. Cobb, Jr., Cobb, Combs, Beasley & Oldfield, Covington, William E. Santen, Cincinnati, Ohio, for appellant.

Donald L. Stepner, Adams, Brooking, Stepner & Mitchell, Covington, S. Arthur Spiegel and James Q. Doran, Cohen, Todd, Kite & Spiegel, Cincinnati, Ohio, for appellees.

REED, Chief Justice.

Appellant W. Thomas McElhinney, a surgeon, sued appellees, the governing authorities of Booth Hospital, because they revoked his staff privileges to admit patients to Booth and to use its facilities in his practice of medicine. The circuit court's judgment from which McElhinney appeals dissolved injunctive relief pendente lite that it had previously granted him and also adjudged that Booth's governing authorities had not acted illegally in terminating appellant's right to practice in the hospital. We granted temporary injunctive relief to ap-

pellant pending disposition of his appeal on its merits. Having concluded that the record establishes the appellant did not violate the hospital's by-laws delineating standards for suspension or termination of physician-staff privileges, we reverse the judgment of the circuit court with direction that appellant's staff privileges be reinstated.

At the direction of the circuit court an evidentiary hearing was conducted by the medical staff of the hospital where appellant was afforded the right to produce evidence and to cross-examine adverse witnesses. Despite appellant's complaints of alleged irregularities in the voting on a recommendation to the Board of Trustees of the hospital, of rulings on the admissibility of evidence, and of the qualifications of medical staff members to participate in the determination of the recommendation, we are satisfied that the hearing and the medical staff vote were sufficiently fair in the procedural aspect that we could not say he was denied procedural due process, assuming of course, as did the parties, that he was entitled to a trial-type hearing. The Board of Trustees of the hospital reviewed a transcript of the medical staff hearing and decided to accept the staff recommendation to revoke appellant's staff privileges. Appellant does not question either the qualifications or the authority of the trustees to act.

We have reviewed the evidence on several occasions and each time we are more convinced than before that the appellant is revealed as an especially competent, dedicated and busy surgeon whose prime concern is the welfare of his patients and the improvement of hospital conditions.

Without unduly detailing the evidence it is sufficient to say that there is not a scintilla of evidence of negligence or incompetence in appellant's care of patients. Nor is he accused of any conduct in his personal or professional life that could be regarded in any manner as detrimental to his patients. He stands accused of being unreasonably critical of the professional performance of some personnel with whom he works at Booth, and of a few inconsequential infractions of regulations which the evidence

shows are more honored in the breach than in the observance by most other practicing surgeons. In no event did the few claimed infractions affect patient care.

We glean from the evidence that appellant probably incurred the wrath of the hospital administration when he insisted that an investigation be made of the complaint of one of his surgical patients that a supervisory nurse had made lesbian overtures to her. It seems that appellant also complained about the dust levels in the operating room. He entered a collision course with a physician named Richfield, who was the chief of pathology at the hospital. Appellant complained that Richfield was too frequently unavailable to read frozen section slides and left too much responsibility to assistants who were not pathologists. Appellant was dissatisfied with the performance of the X-ray department. He entered criticisms of professional performance and hospital procedure upon the records. Appellant was doubtless somewhat abrasive to others in his insistence upon what he conceived to be required standards of care.

Although we have held that the informal hearing procedures used were acceptable in this context, the problem is whether the decision reached was arbitrary. A corollary question is whether judicial review is available. In our view, the circuit court improperly concluded that Booth was a private hospital by using the doctrine of judicial notice rather than by permitting evidence to be taken on the question; nevertheless, we will accept, for purposes of this decision only, that Booth is a private hospital.

In *Burkhart v. Community Medical Center,* Ky., 432 S.W.2d 433 (1968), we cast doubt upon the immutability of the holding stated previously in *Hughes v. Good Samaritan Hospital,* 289 Ky. 123, 158 S.W.2d 159 (1942). In Hughes the holding was that the action of a private hospital in refusing or revoking staff membership will not be disturbed by the courts. The older cases which Hughes followed regarded staff privileges of a physician to practice in a private

hospital to be a privilege rather than a right. This distinction has been increasingly under fire in many areas of the developing law. A different rule generally prevails in the instance of a public hospital. For an extensive discussion of the problem see *Silver v. Castle Memorial Hospital,* 53 Haw. 475, 497 P.2d 564 (1972). It is unnecessary to extend the discussion concerning the extent of judicial review that should be available where the "privilege" of staff membership in a private hospital is revoked as contrasted with where the "right" to staff membership in a public hospital is revoked. Whether the hospital is public or private, it must act in accordance with its charter and by-laws.

■ In this case, the hospital enacted specific regulations governing the suspension or termination of staff privileges. They provided substantially: Suspension: (1) gross professional incompetence or dereliction, (2) gross unethical or moral misconduct, (3) violations of hospital regulations and policies to such an extent that disciplinary action is deemed advisable. Termination: "Violation of sufficient gravity to warrant such action." We deal here not with suspension but termination. The express standards, vague though they be, do not condemn criticisms relating to treatment of patients or hospital practice nor do they proscribe inability to get along with some doctors or hospital personnel. We express no opinion as to the validity of a reasonably definite standard undertaking to proscribe and make a cause of termination inability to work in harmony with other hospital personnel.

"The fact that a doctor, due to criticisms made by him relating to treatment of patients or hospital practices, has been 'unable to get along with' some doctors or hospital personnel is not a sufficient ground to exclude him from the use of hospitals. Obviously physicians will not always agree as to the proper treatment for a patient or as to the proper practices in a hospital. The goal of providing high standards of medical care requires that physicians be permitted to assert their views when they feel that treatment of patients is improper or that negligent hospital practices are being followed. Considerations of harmony in the hospital must give way where the welfare of patients is involved, and a physician by making his objections known, whether or not tactfully done, should not be required to risk his right to practice medicine.

"Moreover, a hospital district should not be permitted to adopt standards for the exclusion of doctors from the use of its hospital which are so vague and ambiguous as to provide a substantial danger of arbitrary discrimination in their application." *Rosner v. Eden Township Hospital District,* 58 Cal.2d 592, 25 Cal.Rptr. 551, 554, 375 P.2d 431, 434 (1962). This quoted language of the Supreme Court of California, though applicable to public hospitals, is nevertheless persuasive in the instant case where a private hospital has undertaken to revoke staff privileges contrary to its express standards because the doctor was critical of the standards of patient care.

■ Therefore we need not further explore the various approaches taken by other courts in considering the general problem. See Note "Hospital Staff Privileges: The Need For Legislation," 17 Stan.L.Rev. 900 (1965), and "The Physicians Right to Hospital Staff Membership: The Public-Private Dichotomy," 1966 Wash.U.L.Q. 485. We hold that a private hospital, regardless of the breadth of discretion that may be extended to it, cannot revoke the staff privileges of a physician in the absence of a sufficiently definite standard proscribing the conduct for which revocation is adjudged.

The judgment is reversed with direction to enter a new judgment reinstating appellant to his staff privileges at Booth Hospital.

All concur except LUKOWSKY, J., not sitting.