630 P.2d 61

**VALLEY VENDORS, INC., an Arizona Corporation, Plaintiff-Appellant,**

**v.**

**Bill JAMIESON, Director, Arizona Department of Economic Security, Defendant-Appellee.**

**No. 1 CA–CIV 4973.**

Court of Appeals of Arizona, Division 1, Department A.

May 12, 1981.

Hungerford & Heilman, P. C. by Robert L. Hungerford, Jr., Scottsdale, for plaintiff-appellant.

Robert K. Corbin, Arizona Atty. Gen. by James A. Tucker, Asst. Atty. Gen., Phoenix, for defendant-appellee.

## OPINION

YALE McFATE, Judge (Retired).

Appellant-employer Valley Vendors, Inc. contests on appeal the ruling of the superior court upholding a decision of the appeals tribunal of the Arizona Department of Economic Security allowing unemployment benefits to claimant Michael Cunning following the termination of claimant's employment with appellant. The question on appeal involves the propriety and effect vis-a-vis unemployment benefits of ordering an employee to submit to a polygraph examination upon penalty of dismissal.

The facts are as follows: claimant was employed by appellant as a vending machine mechanic for approximately four years. An employment application form filled out and signed by claimant at his job interview stated, in effect, that claimant agreed to submit to a polygraph examination to verify the contents of the application.[1] Claimant was hired and took the

---

1. The application form, in pertinent part, reads:

NOTICE
READ THIS CAREFULLY BEFORE FILLING OUT THIS APPLICATION

In order for your application to be properly evaluated, it is essential that all of the questions be answered completely and truthfully. Fill it out in detail. Truthful answers are not only the greatest indication of a person's character, but will get you more consideration for this position than a good impression you may try to make with untruthful answers. The contents of any employment application must be verified before we hire. We have found through the years that there are two ways of effectively accomplishing this:

1. We could write, call and visit former employers, supervisors, friends and neighbors. This normally takes several weeks.
2. Or we could verify the contents of your employment application and work background utilizing polygraph (verification of truth test) which takes one hour. This test, we have found, is fair, impartial and objective. Not only is it a quick time-saver for both of us, but it also eliminates the possibility that some former associate might give you a biased recommendation for personal reasons.

Therefore, after your application is evaluated here, you may be asked to voluntarily submit to a polygraph examination.

In the privacy of the Polygraph labs, with an experienced and certified interviewer, an infor-

initial polygraph examination as he had agreed. He was subsequently asked to take three or four more polygraph examinations during his approximately four years of employment which he on each occasion agreed to take and did take. On May 5, 1978, claimant was again asked to take a polygraph examination. He refused and returned to his workbench, where his supervisor told him he either had to take the test or turn in his keys and "punch out" until he did. Claimant chose to turn in his keys and "punch out." He filed for unemployment benefits a few days later.

Appellant presented testimony at the hearing that in the spring of 1978 appellant suspected losses from the cash boxes of its machines. Consequently, appellant scheduled polygraph examinations for its employees with access to the cash boxes, one of whom was claimant. Further testimony indicated that some employees took the test, others refused and, like the claimant, were subsequently discharged.

Claimant testified that he felt the request to take the examination was for the purpose of harassment. He testified that at the time the polygraph test was required, the police had apprehended an ex-employee who had stolen a complete set of master keys to the vending machines when he quit and was later arrested for taking money out of the machines. Claimant further testified that he and a co-worker had successfully unionized appellant's workers a few months earlier, and since that time there had been several incidents of harassment against claimant. He also testified that he and a co-worker had filed a nine page complaint against appellant with the National Labor Relations Board a few days prior to the request. He thus considered the requested examination merely another incident of harassment.

Appellant first contends that the department was in error in determining that claimant's separation was a discharge. It argues that claimant "constructively quit", citing department precedent cases which state that where a worker refuses to perform a task which is an integral part of his job, he can be deemed to have "constructively quit" rather than to have been discharged. We find this argument unpersuasive.

Whether a separation from employment is a discharge or a quit is often a close question. A.C.R.R. R6–3–50135, designed to aid in this determination, states in part:

Discharge or quit (V L 135).

A. General (V L 135.05)

1. A worker's separation from employment is either a quit or a discharge.

2. The claimant quits when he acts to end the employment and intends this result.

3. The separation is a discharge when it results from the employer's intent and action. This includes layoff for lack of work, and requests by the employer for worker's resignation.

4. In borderline cases the determination of whether a separation is a quit or discharge will be made on the basis of who was the moving party.

A.C.R.R. R6–3–50190 states in part:

Evidence (V L 190)

&ast; &ast; &ast; &ast; &ast; &ast;

B. Burden of proof and presumption (V L 190.1)

. . . . .

mal interview followed by a polygraph examination will be conducted to simply and quickly verify the contents of your employment application.

The results of your interview and polygraph examination are confidential and can be released to no one else without your consent and signature on a release form.

UNDER NO CIRCUMSTANCES WILL YOU BE ASKED ANY PERSONAL OR EMBARRASSING QUESTIONS

Remember ... You are not expected to be perfect. We are looking for truthful answers concerning your background, not perfect answers.

Please sign below as an indication of your willingness to voluntarily submit to an informal interview followed by a polygraph examination to verify the contents of your employment application and work background.

Dated _____ Signature _____

2. The burden of proof rests upon the individual who makes a statement.

. . . . .

c. When a claimant states that he did not leave voluntarily, and the employer maintains he did, the burden of proof shifts to the employer to establish that there has been a quit.

Under the procedural rules in effect at the time, the department's findings must be sustained unless they were arbitrary, capricious, or showed an abuse of discretion. *Schade v. Arizona State Retirement System*, 109 Ariz. 396, 510 P.2d 42 (1973). The department's legal conclusions, however, are not binding on this court and we are free to make an independent determination on such questions. *Eshelman v. Blubaum*, 114 Ariz. 376, 560 P.2d 1283 (App. 1977).

■ We need not reach the question of whether the issue of discharge or quit is one of law or fact because, in either case, we agree with the tribunal's conclusion, stated in its *Reasoning and Conclusions of Law* as follows:

However, in this case it appears that the employer was the moving party in informing the claimant that unless he agreed to take the polygraph test that he could no longer work there and ordered him to turn in his keys and other equipment and punch out. Therefore, the Tribunal finds that the case was a discharge and not a voluntary leaving.

This conclusion is supported by the evidence. We find no error.

Appellant states as his next assignment of error:

D.E.S. [the Arizona Department of Economic Security] erred, in the alternative, in determining that the discharge of the Claimant was not for good cause.

A.R.S. § 23–775 states in part:

Disqualification from benefits

An individual shall be disqualified for benefits:

. . . . .

2. For ... ten consecutive weeks ... after he has been discharged for wilful or negligent misconduct connected with the employment ....

"Misconduct connected with the work" is defined in A.C.R.R. R6–3–5105 as:

[A]ny act or omission by an employee which constitutes, a material or substantial breach of the employee's duties or obligations pursuant to the employment or contract of employment or which adversely affects a material or substantial interest of the employer.

■ Appellant contends that submission to periodic polygraph examinations by claimant was a condition of his employment, and within the meaning of A.C.R.R. R6–3–5105, claimant breached his contract by refusing to take the requested examination and hence was disqualified for benefits under A.R.S. § 23–775(2) for wilful or negligent misconduct connected with the employment. As noted before, the original polygraph examination was limited to verification of the application form and there was no condition in the application for employment or the contract of employment to take additional polygraph examinations. We find no substantial evidence of any subsequent modification of the employment contract in respect to polygraph examinations and claimant denies that a polygraph examination was ever a condition of his employment. We are thus not persuaded by this argument.

In view of the foregoing, it is unnecessary to determine whether this court should adopt the holdings of several unemployment compensation agencies of other states to the effect that denial of benefits cannot be predicated on refusal to take a polygraph examination even though the employment contract provided for such examinations. See, for example, Comm.Dec.No. 5484–C, 2/13/71 (CCH, Unemp.Ins.Rep., Va. ¶ 1970.-35); App.Bd.Dec.No. 127,422, 12/14/65 (CCH, Unemp.Ins.Rep., N.Y. ¶ 1970.261, 1975.1681).

The appellant argues that, due to the nature of the vending machine business, polygraph examinations are an integral part of an employee's duties. He cites *Eshelman v. Blubaum, supra,* and *Fichera v.*

*State Personnel Board*, 32 Cal.Rptr. 159, 217 Cal.App.2d 613 (Cal.App.1963), as support for his position that employees can be dismissed for refusal to submit to a polygraph examination and that polygraph examinations are proper tools to be utilized in internal company investigations. However, both *Eshelman* and *Fichera* involved police officers. Neither case was concerned with rights of private citizens under a workmen's unemployment insurance law. *Eshelman* held that the compulsory use of the polygraph during a sheriff's investigation of the activities of a deputy in his office is appropriate in that it is "consistent with the maintenance of a sheriff's department that is of the highest integrity and beyond suspicion."

The court noted that an officer may refuse to submit to a polygraph examination if the order is shown to be unreasonable. *Eshelman* cites *Fichera, supra.* In *Fichera*, the court pointed out that due to their peculiar and delicate position, there are special considerations which apply to public law enforcement officers which do not apply to private citizens, and that its decision related only to the former and as to them only when appropriate circumstances are present.

Both the *Eshelman* and *Fichera* courts were concerned primarily with the right of the State to *discharge* the officers for refusing to take the test. In the instant case, it is not disputed that appellant had the right and ability to discharge the claimant. We are concerned only with the effect of that discharge on claimant's ability to qualify for unemployment benefits.

We conclude that the cases relied on by appellant are not persuasive on the issues presented here. Even if we were convinced that *Eshelman* is applicable to our case, nevertheless that decision specifically mandates certain procedural safeguards before an officer may be subjected to a polygraph examination, including a requirement that he be advised that the answers cannot be used against him in a criminal prosecution. Appellant contends this requirement was unnecessary in this case because as a result

of a previous polygraph examination of claimant, claimant had admitted misusing certain funds and no criminal complaint had been filed against him as a result on that occasion. We do not consider this justification for dispensing with the specific requirement set forth in *Eshelman*, however, with respect to the subsequent requested examination.

In the area of unemployment insurance, this is a case of first impression in Arizona. We have been referred to only two appellate court decisions which are closely analogous to the case presented to this court: *Swope v. Florida Indus. Com'n Unemp. Comp. Bd. of Rev.*, 159 So.2d 653 (Fla.1963), and *Charles Livingston & Sons, Inc. v. Constance et al.*, 185 N.E.2d 655 (Ohio App. 1961). In both instances the court upheld the granting of unemployment compensation to employees who had been discharged for refusal to take lie detector tests.

In *Swope*, the employer, after discovering inventory shortages, notified its employees they would be required to submit to polygraph tests periodically. Two employees refused and were discharged. The court said:

At the outset we observe the record does not support the conclusion reached by the appeals referee and adopted by the Board that petitioners voluntarily left their employ. After refusing to take the test petitioners reported for work the following day but were paid off and turned away. The determinative question is whether their refusal to submit to a lie detector test, in the circumstances presented, amounted to misconduct connected with their work. We hold it did not and that the challenged ruling was erroneous.

Byron's could impose the rule and could discharge an employee who would not take the lie detector test. However, violation of an employer's rule which leads to discharge will not disqualify one for benefits unless it appears that the action which prompted the discharge amounted to misconduct within the meaning of the

Act. Here the petitioners' discharge was not based on misconduct as defined.

\*     \*     \*     \*     \*     \*

In the instant case petitioners had not been singled out and accused of any acts of dishonesty. As to them the test was a fishing expedition. It has been disclosed that a tenth of the population are unfit subjects for polygraph tests, and that such tests tend to inaccuracies in from something less than ten up to twenty-five per centum of cases. See *People v. Davis*, 343 Mich. 348, 72 N.W.2d 269. Thus an innocent employee taking such a test could be risking loss of job and reputation at odds similar to those in Russian roulette.

*Swope, supra*, at 654.

There are numerous administrative decisions from a number of states indicating that such refusal does not amount to misconduct justifying loss of unemployment benefits.[2] These decisions are based on the inherent unreliability of the polygraph, as shown by its inadmissibility in court in both criminal and civil matters, the potentiality for abuse of the test, and the implicit possibility of an invasion of the employee's privacy in matters of no concern to the employer.

An Illinois administrative decision summarizes these rulings as follows:

> [I]t clearly appears that the injury to the legitimate rights of the employee resulting from the industrial use of life detector tests far outweighs the unsure benefit to the employer. Therefore, the refusal of an employee to submit to such a test is not in itself misconduct.

*Illinois Board of Review Dec. No. 65–BRD–111*, (January 11, 1965), (CCH, Unemployment Insurance Reports, Illinois New Matters ¶ 1970.) *See* A.C.R.R. R6–3–51485(A)(1) & (2). From the foregoing, it is obvious that the great weight of judicial authority and administrative decision is against appellant's position on this appeal.

■ Appellant further alleges as error that the department's appeal tribunal improperly placed the "burden of proof" upon it. However, A.C.R.R. R6–3–51190(B)(2)(b) states:

> When a discharge has been established, the burden of proof rests *on the employer* to show that it was for disqualifying reasons. This burden may be discharged by an admission by the claimant, or his failure or refusal to deny the charge when faced with it. (emphasis added)

We find no merit to this argument.

Appellant lastly contends that clear intent of the Arizona Employment Security Act, A.R.S. § 23–601 et seq., excludes the claimant from benefits. Appellant's argument appears to be that unemployment insurance departments throughout the country have been "soft" on employees where polygraph examinations have been involved. Appellant urges that we here take up the slack. We, however, feel that the rule adopted by the unemployment insurance agencies throughout the land is both well-reasoned and fair. Polygraph examinations, as noted above, are both intrusive and

---

2. *See, e. g.*, App.Bd.Dec.No. 127,422, 12/14/65, (CCH, Unemployment Insurance Reports, N.Y. ¶ 1970.261, 1975.1681); Bd. of Rev.Dec.No. 65–BRD–111, 1/11/65 (CCH, Unemp.Ins.Rep.Ill. ¶ 1970); Bd. of Rev.Dec.No. B–99020 (Pa.B, MC–45.05–73, BSSUI), 12/28/67 (CCH, Unemp.Ins.Rep., Pa. ¶ 1970.151); App.Ref.Dec.No. A–12–212, 3/16/64 (CCH, Unemp.Ins.Rep., Nev. ¶ 1970); Bd. of Rev.Dec. 113–BR–63, 5/17/63 (CCH, Unemp.Ins.Rep., Okla. ¶ 1970); Comm.Dec.No. 5484–C, 2/13/71 (CCH, Unemp.Ins.Rep., Va. ¶ 1970.35); App.Ref.Dec.No. 20,934–AT–65, 6/23/65 (Tex.A. MC–190.15–57, BSSUI), aff'd by Comm.Dec.No. 482–CA–65, 7/13/65 (CCH, Unemp.Ins.Rep., Tex. ¶ 1970.-35).

unreliable. Several states have enacted statutes prohibiting such tests.[3]

We hold that the refusal of the employee-claimant to submit to the polygraph examination in this case did not constitute wilful or negligent misconduct connected with his employment and did not bar his right to receive unemployment insurance benefits.

The decision of the Department of Economic Security is affirmed.

CONTRERAS, P. J., and OGG, J., concur.

3. For example, Alaska statutes, Title 23, Sec. 23.10.037; West's Annotated California Codes, Labor § 432.2; Massachusetts General Laws, Annotated, Chap. 149, § 19B; Oregon Revised Statutes, Sec. 659.225; General Laws of Rhode Island, Sec. 28–6.1–1. The Alaska and Massachusetts statutes specifically exempt police officers from their purview.