Peggy PIPER, Appellant,

v.

The SINGER COMPANY, INC., d/b/a Earle C. Clements Job Corps Center and Kentucky Unemployment Insurance Commission, Appellees.

Court of Appeals of Kentucky.

Jan. 27, 1984.

D. Todd Littlefield, Western Ky. Legal Services, Owensboro, for appellant.

Sidney H. Hulette, Ruark & Hulette, Morganfield, for appellee, The Singer Co., Inc.

Barbara Rader McAdam, Cabinet for Human Resources, Frankfort, for appellees.

Before CLAYTON, LESTER and MILLER, JJ.

LESTER, Judge.

This is an appeal from a judgment reversing a determination of the Unemployment Insurance Commission that appellant was entitled to benefits.

The appellant, who had worked at the Job Corps Center for six and one half years, became pregnant, and her condition with resultant complications coupled with the work-related stressful conditions caused her to consult with her doctor. Based upon information given him by Piper, the physician recommended in writing that his patient should not work at her present place of employment during pregnancy. While so stating, on May 11, 1982, the doctor later modified his position, on August 16, 1982, to "[p]hysically able to work in a non-stress situation."

Not only were medical views subject to change but so also were determinations by the commission's examiners, for Piper was first determined to be ineligible for benefits, then eligible and then, again, ineligible. She took an appeal and a referee concluded that she was discharged, but not for proven misconduct, and reinstated her eligibility. The K.U.I.C. affirmed the referee, but the Union Circuit Court, after making its own findings of fact, reversed the commission.

Before delving into the facts of this cause, we believe a review of applicable legal principles to be enlightening at this juncture. In the first place, if the findings of fact of an administrative agency are supported by substantial evidence of probative value, they must be accepted as binding upon the reviewing court, and then it must be determined whether or not the agency applied the correct rule of law to the facts so found. *Southern Bell Telephone and Telegraph Co. v. Kentucky Unemployment Ins. Comm.,* Ky., 437 S.W.2d 775 (1969); *Tackett v. Kentucky Unemployment Ins. Comm.,* Ky.App., 630 S.W.2d 76 (1982). Substantial evidence has been defined as being that of substance and relative consequence, *O'Nan v. Ecklar Moore Express, Inc.,* Ky., 339 S.W.2d 466 (1960), while the test of substantiality has been set forth in

*Kentucky State Racing Commission v. Fuller,* Ky., 481 S.W.2d 298, 308 (1972), as being:

... whether when taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men.

It requires no citation of authority to point out that upon appeal from an administrative agency, charged with the duty of fact finding, that a reviewing court is not free to substitute its judgment for that of the agency unless the latter acted in an arbitrary or capricious manner. In the case at bar, there is not the slightest suggestion that the referee or commission acted as such. It is also axiomatic that the court should not make its own findings of fact. Although the criteria for court review of administrative determinations is somewhat elusive, one of the best statements addressing the problem is found in *Commonwealth v. Frost,* 295 Ky. 137, 172 S.W.2d 905, 909 (1943), to the effect:

There are many factors affecting the scope of judicial review of administrative action. Neither its extent nor limitation can be closely defined. In the absence of statutory authority in a particular case, it may be said that the courts will not, under the pretext of finding a remedy for one believed to be wronged, assume to exercise a discretion which the people, acting through their Legislature, have lodged in administrative officers and agencies.

As said in *Bancamerica-Blair Corporation et al v. State Highway Commission et al,* 265 Ky. 100, 95 S.W.2d 1068, 1071: "The very essence of a discretionary power is that the person or persons exercising it may choose which of several courses will be followed. The power to exercise an honest discretion necessarily includes the power to make an honest mistake of judgment."

Judicial discretion is a thing apart, and administrative discretion will not be disturbed by the courts unless it is abused or unreasonably exercised or is otherwise unlawful. (citations omitted)

Since it will assume some significance, we now turn to a discussion of the application of the hearsay rule to this litigation. The rule, historically speaking, originally developed during the Restoration of the English monarchy (1660–1685), 5 Wigmore, *Evidence* § 1364 (Chadbourn rev. 1974), and finds its way to our system of American jurisprudence through our adoption of the English common law and, in criminal matters, by virtue of our constitutional right to confrontation. It is equally applicable to the civil law, Lawson, *Kentucky Evidence Law Handbook,* § 8.00 (1976), but has not been incorporated in our rules of procedure. Whether the hearsay rule is to be applied in a hearing conducted by an administrative agency or not is immaterial, for we are aware that upon review of the conclusions of such a body the civil rules do apply to the appellate court. This has been so determined in *Brown Hotel Co. v. Edwards,* Ky., 365 S.W.2d 299, 300 (1963), a case involving a K.U.I.C. appeal.

With the foregoing in mind, we now return to the facts. Peggy Piper, an orientation processor, had worked for the job corps center for more than six years when she became pregnant. During the course of her employment, she had observed or been involved in incidents of violence which she claimed created stress and a fear for the well-being of her unborn child. Interestingly enough, although the center maintained it was as safe or safer within its gates as it was on the city streets, it, nevertheless, adduced evidence of the employment of a security force, the use of security devices, and frequent inspections for contraband, such as weapons. In addition, it admitted that one or more of the incidents related by appellant had in fact occurred. Piper told her doctor of the uneasiness that she felt in her job which, she said, produced vomiting and nausea. On that basis, he recommended that she cease work until after she gave birth. When she applied for maternity leave, appellee denied that it had such a form of absence, or any policy dealing therewith. Its witnesses maintained this position in spite of Piper's evidence from the employee's handbook which provided for the following:

## MATERNITY LEAVE

Maternity Leave should be granted to any permanent, full-time employee who has been with the company for one year. Recognizing the hazards of working during pregnancy, the employee has a privilege of working as long as she can perform the duties of her job and has her doctor's approval.

and

Employees are eligible to return to work upon termination of pregnancy, unless her position being to physically unable to safely perform her regular duties, release from position is necessary to return to work. (Sic)

Albeit poorly worded, we care not what appellee may term it, to us the foregoing represents a maternity policy providing for maternity leave. That portion produced in the record provides for no maximum or minimum duration of the leave.

In its efforts to defeat Piper's unemployment benefits, the center takes the position that it denied her request for leave and discharged her because she was guilty of misconduct, in that she misrepresented to her doctor the working conditions as to violence and stress, in order to obtain his written recommendation, all of which constituted a willful or wanton disregard of the employer's interests.

Examination of the record reflects the erroneous involvement of the defense theory and how it appeared as evidence in the record. Upon application for leave, the center's doctor, who never examined appellant, communicated with Piper's doctor, who allegedly advised that the employee was "goldbricking" and that actually she could work. The center's doctor testified to the statement even though *Piper's physician never appeared.* At the referee's hearing, appellant objected to the testimony, in spite of the fact that she had no attorney. The hearing officer recognized the testimony to be hearsay, but did not exclude it. The

referee must have been cognizant of the hearsay rule and was applying it for he sustained an objection on that basis made by appellee's counsel during the evidence presented by appellant.

The referee specifically determined that Piper was not guilty of misconduct and allowed benefits because 26 U.S.C. § 3304(a)(12) does not permit denial of compensation on the basis of pregnancy. The commission affirmed the award and the employer appealed. In reversing the fact finder, the circuit court made its own finding. This is prohibited. In so doing, it relied heavily upon the hearsay "goldbricking" evidence which it cannot do because of the rules of evidence and the law are applicable to judicial review. The tribunal further substituted its judgment as to misconduct upon Piper's part for that of the commission, and this it is prohibited from doing. Again, we reiterate, all appellant had to do was present evidence of sufficient probative value to induce conviction in the minds of reasonable men, and she accomplished this before the commission. We, again, point out that appellees did not argue that the fact finders acted arbitrarily, capriciously or unreasonably.

We note that the findings of the circuit court denominate appellant as "a single woman" and we can find absolutely no foundation for this conclusion anywhere in the record with the exception of the proposed findings and conclusions tendered by the appellee, job corps center, which the court adopted verbatim. This demonstrates to us that the court below did not thoroughly review the record.

The judgment is reversed with directions that the Union Circuit Court make the appropriate entry affirming the decision of the Kentucky Unemployment Insurance Commission.

All concur.