**Gloria DOUTHITT, Appellant,**

v.

**KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION and Minit Mart Foods, Inc., Appellees.**

Court of Appeals of Kentucky.

May 4, 1984.

Discretionary Review Denied by Supreme Court Oct. 17, 1984.

Brenda G. Lowe, Western Ky. Legal Services, Paducah, for appellant.

Paul F. Fauri, General Counsel, Martin Z. Kasdan, Jr., Cabinet for Human Resources, Frankfort, for appellee, Kentucky Unemployment Insurance Commission.

Stephen Smith, Jr., Milton M. Livingston, Jr., McMurry & Livingston, Paducah, for appellee, Minit Mart Foods, Inc.

Before COMBS, HOWARD and Mc-DONALD, JJ.

COMBS, Judge.

This is an appeal from the judgment of the McCracken Circuit Court, affirming the Kentucky Unemployment Insurance Commission's denial of unemployment benefits to appellant.

Appellant commenced working for appellee Minit Mart in 1977. This employment was rather brief, due to her family moving from the area. In 1978 they returned and she was re-employed by Minit Mart on a temporary basis, but later employed on a permanent basis and became the manager of the store. After appellant was re-employed, Minit Mart adopted a written policy which required its employees to submit to polygraph examination upon request. On April 16, 1981, the appellant signed Minit Mart's "Indoctrination Sheet for New Employees". The relevant sections of that document read as follows:

. . . . .

9. Explanation given that Minit Mart Foods Inc., gives polygraph tests in certain loss situations.

. . . . .

I, Gloria Douthitt /signed/, have read the above and have been instructed on same.

<u>Gloria Douthitt /signed/</u>
Signature of Training Manager

Afterwards, a shortage was discovered. Appellant and other employees submitted to polygraphic examination and apparently all were exonerated.

In August 1982, another periodic inventory was taken of the store managed by appellant. This inventory revealed a shortage of approximately $1200. Management immediately made arrangements to have appellant and other employees submit to polygraphic testing. Apparently the inventory was completed in record time. Appellant asked that the store be re-inventoried to see if an error had been committed. Evidence revealed that other re-inventories had cleared up apparent shortages. The management refused to have the recount. Appellant then asked that the inventory crew be examined, as well as she and the other employees. Management refused this request. On August 23rd appellant refused to submit to the test, and she was then summarily discharged. She filed an

application for unemployment insurance, and appellee, Minit Mart, filed a protest. At the hearing before the Appeals Referee, Minit Mart was represented by counsel, but appellant was without counsel.

In resisting the application, appellee, Minit Mart, contended that appellant was discharged for misconduct in refusing to submit to the requested test. They contended that such refusal constituted misconduct as defined in K.R.S. 341.370(1)(b), a "... knowing violation of a reasonable and uniformly enforced rule of employer; ...." Appellant denied any wrongdoing and contends that her refusal was justified because the company failed to have a recount or require the inventory crew to submit to polygraph examination along with her and the other employees. She also contended that the requirement of polygraphic examination was an unreasonable request on the part of the employer; that polygraphic results were unreliable and constituted an invasion of privacy and violated her right against self-incrimination. The Appeals Referee, Hon. Roger S. Gordon, ruled in appellant's favor and affirmed the adjusted determination. In so doing, he cited Kentucky Unemployment Insurance Commission Order No. 10933 which held that an employee discharged for failure to comply with an employer's request to submit to polygraphic examination was discharged for reasons other than misconduct connected with work because that employee had the constitutional right to refuse possible self-incrimination. He also observed this was so even though appellant had signed a document agreeing to such, because she still had the option of exercising her constitutional right to refuse possible self-incrimination.

An appeal was promptly prosecuted to the Commission. On March 21, 1983, the Commission entered an Order reversing the Referee's decision, with Associate Commissioner Edwin D. Erwin dissenting. In reversing, the Commission adopted the Appeals Referee's findings of fact, but erroneously found, "[I]n the present case, at the time of hire, the claimant was aware that the company gave polygraph tests; there-fore, she had an obligation to her employer to take it. Her refusal to take it was tantamount to misconduct connected with the work." The uncontradicted evidence clearly established that appellant had been employed some two or three years prior to the adoption of the policy on April 16, 1981.

The appeal taken from this ruling was affirmed by the McCracken Circuit Court.

Appellee argues that the Commission should be affirmed because its findings were supported by substantive evidence, and that the applicable law had been correctly applied. We disagree and reverse.

This is a case of first impression in this state. The parties have not presented and the Court has not found any appellate decision from another state in which an employee's refusal to take a lie detector test has barred unemployment compensation. *See Valley Vendors v. Jamieson,* 129 Ariz. 238, 630 P.2d 61, 18 A.L.R.4th 298 (App. 1981), and decisions cited in Annot., 18 A.L.R.4th 307 (1982).

The appellees rely on K.R.S. 341.370(6). That section defines misconduct and includes, "... knowing violation of a reasonable and uniformly enforced rule of employer; ...." This section was added by the General Assembly in 1982, and became effective some fifty days before appellant was terminated. This statute defines "misconduct" approximately the same way as it is defined by *Boynton Cab Company v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941). The principle of *Boynton* has been followed by this state, and by the states whose decisions are relied upon by appellant.

Appellees argue that submission to polygraph examination was a condition for the appellant's employment, and that her breach of this condition constituted misconduct.

■ The Commission found that appellant was aware of this policy at the time she was hired. We find no substantial evidence to support this finding. However, assuming that there was substantial evi-

dence to support this finding, for a claimant to be denied unemployment insurance benefits for violation of an employer's rule, the rule must be reasonable and uniformly enforced. The statutory phrase uses the word "reasonable." It is not the practice of a particular employer and employee that determines misconduct. We are to examine the facts of each case in light of the reasonable employment relationship.

 An employer's requirement that employees submit to polygraph examination is an unreasonable rule. Polygraph examinations are unreliable. *Conley v. Commonwealth,* Ky., 382 S.W.2d 865 (1964); *Swope v. Florida Industrial Commission Unemployment Compensation Board of Review,* 159 So.2d 653 (Fla.App.1963). It is unreasonable that an innocent employee would be forced to risk loss of his reputation and future employment because of his employer's requirement that he submit to polygraph examination.

Had the appellant taken the test and the results indicated that she was responsible for the shortages, and had she been discharged for that reason, unemployment compensation benefits would have had to be granted. The Unemployment Insurance Commission must rely on evidence that complies with the rules of Evidence. *Piper v. The Singer Company, Inc.,* Ky.App., 663 S.W.2d 761 (1984). Results of polygraph examinations are inadmissible to both civil and criminal actions. *Conley, supra; Perry v. Commonwealth, ex rel. Kessinger,* Ky., 652 S.W.2d 655 (1983). Inasmuch as the results of the tests cannot be used to show misconduct, refusal to submit to those tests cannot be used to show misconduct.

We hold that it is unreasonable for an employer to require its employees to submit to such an unreliable test for purposes of unemployment compensation benefits. Whether an employee would have a claim for relief because he was terminated for refusal to submit to a polygraph examination is not addressed by this opinion.

For the above reasons, the judgment of the McCracken Circuit Court is reversed, with directions to remand the case to the Kentucky Unemployment Insurance Commission for an award of unemployment benefits to appellant.

All concur.