Robert J. JOHNSON, M.D., Appellant,

v.

GALEN HEALTH CARE, INC.; and the Credentials Committee of The Medical Staff of Audubon Regional Medical Center, said Committee being then Composed of Drs. Eldon W. Olson, M.D.; Jeffrey W. Berg, M.D.; Robert L. McQuady, M.D.; James L. Stivers, M.D.; James R. Cundiff, Jr, M.D.; Albert B. Hoskins, III, M.D.; Frederick K. Cressman, Jr., M.D.; George H. Zenger, M.D.; and William L. Weber, M.D., Appellees.

No. 1998–CA–000772–MR.

Court of Appeals of Kentucky.

Decided Jan. 12, 2001.

Case Ordered Published by Court of Appeals March 9, 2001.

J. Fox Demoisey, Louisville, KY, Brief for Appellant.

Hiram Ely, III, Louisville, KY, Brief for Appellee.

Before DYCHE, JOHNSON and TACKETT, Judges.

### OPINION

JOHNSON, Judge:

Robert J. Johnson, M.D., has appealed from the opinion and order entered by the Jefferson Circuit Court on December 29, 1997, that granted summary judgment to the appellees and dismissed Johnson's claims with prejudice. Having concluded that the circuit court was correct as a matter of law, we affirm.

Dr. Johnson, a cardiovascular surgeon, was recruited in 1992 by Galen of Kentucky, Inc., d/b/a Audubon Regional Medical Center to relocate to Louisville, Kentucky. The doctor and the hospital entered into a contract which required Dr. Johnson to "apply for and receive medical staff privileges at Hospital." In December 1992, Dr. Johnson was granted his medical license in Kentucky. On December 9, 1992, Dr. Johnson was granted temporary privileges at Audubon, but on March 29, 1993, those temporary privileges were terminated.

On May 3, 1993, Dr. Johnson filed a complaint against Audubon and its credentials committee seeking *inter alia* that he be "afforded a 'due process hearing' on" the "termination of temporary clinical privileges"[.] On May 28, 1993, the parties entered into a written agreement "concerning the procedures through which (a) DR. JOHNSON's temporary staff privileges at AUDUBON REGIONAL MEDICAL CENTER ('AUDUBON') were terminated, and (b) DR. JOHNSON's application for staff privileges at AUDUBON was being handled[.]" The parties agreed to specific provisions for disclosure of documents to Dr. Johnson, a written response by Dr. Johnson and a

hearing before the appropriate hospital committees.

The Executive Committee of the Medical Staff met on May 4, 1993, and allowed Dr. Johnson "to discuss issues surrounding his application[.]" The Executive Committee gave the following bases for voting to deny Dr. Johnson staff privileges:

1. Misrepresentation of information on his initial application, which is in violation of the Medical Staff Bylaws and the Kentucky Medical Practice Act.
2. Prolonged history of inability to work well with others, as evidenced by references, personal communications, and disciplinary actions.
3. Misrepresentation of information on his application for Medical Licensure to the Kentucky State Board of Medical Licensure.

The hospital's Hearing Committee then met on June 10, 1993, and spent four hours hearing presentations by Dr. Johnson and the hospital, which included evidence from various doctors. On June 17, 1993, the Hearing Committee sent a letter to the Chairman of the Executive Committee which set forth the following action:

The Hearing Committee voted to uphold the Executive Committee's decision not to approve Dr. Robert Johnson's application for appointment to the medical staff. Under Article III, Section 2.A.5.d., a medical staff member shall provide documentation of ability to work and cooperate with the Hospital personnel and staff members. The material that was presented to our Hearing Committee showed a consistent pattern of behavior on Dr. Johnson's part; that being a consistent evaluation by others of Dr. Johnson's ability to work with others to be fair or poor.

The Hearing Committee also made note of inconsistencies in Dr. Johnson's CAPS applications completed December 22, 1992 and March 31, 1993, respectively. Under Article IV, Section 1.G., the applicant shall completely fill in all parts of the application. Falsification of the application in any material respect shall void the application and cause such application to be deemed withdrawn. Also under Article III, Section 3, each applicant agrees "and fully understands that any significant misstatements in or omissions from his/her application constitutes cause for refusal of his/her application, or for disciplinary action as provided in these Bylaws."

Dr. Johnson was then allowed to present an argument to the hospital's Board of Trustees, but the Board on June 23, 1993, affirmed the Executive Committee's decision. The hospital then reported to the Kentucky Board of Medical Licensure and the National Practitioner Data bank its grounds for denying Dr. Johnson's application for appointment to the medical staff.

On October 8, 1993, Dr. Johnson filed an amended complaint in the Jefferson Circuit Court which updated his allegations of wrongdoing by the hospital by detailing the adverse action the hospital had taken against him in denying him staff privileges. Dr. Johnson claimed that the hospital had stopped its guaranteed payments to him of $25,000.00 per month pursuant to the recruiting agreement and "[t]hat the real reason, and only reason, the Defendants conspired to, and caused Plaintiff's hospital privileges to be termination [sic] and thereafter denied was for the purpose of evading its contractual commitments[.]" Dr. Johnson alleged that the hospital's actions were "arbitrary and capricious" and that he had been denied "due process." Dr. Johnson sought damages for loss of income and loss of professional reputation.

■■■ After protracted discovery and motion practice, the case was briefed by the parties on the question of liability and submitted to the circuit court for a decision. The circuit court in its opinion and order observed "that the issue to be resolved was whether Dr. Johnson was provided due process in having his temporary privileges revoked and his full staff privi-

leges denied." The circuit court noted that "Dr. Johnson contends that he was denied meaningful due process, in that no 'findings of fact' were produced; there was a lack of properly presented and authenticated evidence; and there was a lack of identifiable and applicable standards during the adjudicative processes." The circuit court correctly stated its standard of review as follows:

> The Court has inherent power, under Section 14 of the Kentucky Constitution, to scrutinize the acts of administrative tribunals, or in this instance, the Credentials Committee, wherein the personal or property rights of an individual have been adjudicated. *See, McElhinney v. William Booth Memorial Hospital,* Ky., 544 S.W.2d 216 (1976).
>
> > Herein it was [the Credentials Committee's] exclusive province to determine the weight to be given the evidence presented.... [T]he [Committee] was composed of a group of [Dr. Johnson's] peers, all being highly trained and possessing expertise as to matters of medical evidence and conduct. In such a situation the substantial evidence rule is correctly applicable.
>
> *Kirk v. Jefferson County Medical Society,* Ky.App., [577] S.W.2d 419, 422 (197[8]). Accordingly, Dr. Johnson is entitled to an appellate-like review of the record of the proceedings. He is not entitled to a *de novo* review of the medical staff's decision.
>
> "If the Board's decision is unsupported by substantial evidence or law, then it is clearly erroneous or arbitrary. That determination is properly within the [appellate] province of the circuit court." *Kentucky Bd. of Nursing v. Ward,* Ky. App., 890 S.W.2d 641, 643 (1994). "If the findings of fact are supported by substantial evidence of probative value, then they must be accepted as binding and it must then be determined whether or not the administrative agency has applied the correct rule of law to the facts so found." *Southern Bell Telephone and Telegraph Co. v. Kentucky Unemployment Ins. Comm'n,* Ky.[ ], 437 S.W.2d 775, 778 (1969). Substantial evidence has been defined as being that of substance and relative consequence. *O'Nan v. Ecklar Moore Express, Inc.,* Ky., 339 S.W.2d 466 (1960). The test of substantiality has been set forth as being " ... whether when taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men." *Kentucky State Racing Comm'n v. Fuller,* Ky., 481 S.W.2d 298, 308 (1972).

> . . .

> Additionally, in making his argument before this Court, the [sic] Dr. Johnson refers to evidentiary matters which pertain to the weight of the evidence and witnesses' testimony provided at the administrative-like hearing. Dr. Johnson identifies evidence and testimony which he believes disputes the conclusions of the Committee. A reviewing court is not free to substitute its judgment for that of the agency, unless the latter acted in an arbitrary and capricious manner. *Piper v. The Singer Company, Inc.,* Ky.App., 663 S.W.2d 761, 763 (1984). The reviewing court is limited to review the record made before the committee, and, where it has found against Dr. Johnson, the findings of fact of the Committee will not be disturbed unless the evidence is so persuasive that one would have no choice but to find for Dr. Johnson. *Kentucky Unemployment Ins. Comm'n v. Murphy,* Ky., 539 S.W.2d 293, 294 (1976). Kentucky case law establishes that it is the role of the administrative agency, acting as the trier of fact, to determine the credibility of witnesses and pass on the weight of the evidence, not the reviewing court. *Kentucky State Racing Comm'n v. Fuller,* Ky., 481 S.W.2d at 308; *Energy Regulatory Comm'n v. Kentucky Power,* Ky. App., 605 S.W.2d 46, 50 (1980). It is beyond the review of this Court to de-

termine the facts of the case. That is the province of the Committee. This Court is limited to the determination of whether the Committee has provided Dr. Johnson with due process in the proceedings, which the Court finds was done.

The circuit court dismissed Dr. Johnson's complaint and this appeal followed.

■ Our standard of review of a circuit court's review of an administrative action was set forth in *Jones v. Cabinet for Human Resources*,[2] as follows:

In an appeal of an administrative action by an agency, the circuit courts are to provide review, not reinterpretation. *Kentucky Unemployment Insurance Commissioner v. King*, Ky.App., 657 S.W.2d 250 (1983). Thus, when substantial evidence exists in the record to support an administrative agency's action, the circuit court has no authority to overturn it. *Kentucky State Racing Commission v. Fuller*, Ky., 481 S.W.2d 298 (1972). Our task is to determine whether or not the circuit court's findings upholding the Cabinet are clearly erroneous. CR 52.01.[3]

Thus, at this level of appellate review, Dr. Johnson has the very high burden as to the factual issues of showing that the circuit court was clearly erroneous in finding that the Executive Committee's decision was supported by substantial evidence. Dr. Johnson, perhaps in recognition of this difficult task, has instead challenged the circuit court's decision on an issue of law: whether he was afforded due process. Dr. Johnson frames these issues by asserting that the trial court

erred by holding that due process was afforded in the following action, to wit:

"(1) None of the adjudicative processes produced 'findings of fact'[;]

(2) The lack of properly presented and authenticated 'evidence'[; and]

. . .

(3) The lack of identifiable and applicable 'standards'[.]"

■ Dr. Johnson argues that "at no time did the Credentials Committee, the 'Hearing Committee' for the Medical Staff, or the Board of Trustees ever make basic 'findings of fact' with which to support their *conclusions*." Dr. Johnson quotes from *Pearl v. Marshall*,[4] in part, as follows:

It is the opinion of the court that findings of fact are essential to support the orders of administrative agencies, at least where the order issued by the agency rests upon a factual determination.

. . .

The difficulty imposed by the failure of an administrative agency to make findings of fact upon which it predicates its action is in some respect akin to the difficulty created by lack of standards to serve as guidelines for the agency in the exercise of its discretion, a difficulty to which we directed attention in *Bickett v. Palmer–Ball*, Ky., 470 S.W.2d 341 (1971).

The goal of the administrative process must be to insure uniformity of treatment by administrative agencies to all persons who are similarly situated. Without the application of uniform standards, uniformity of treatment is difficult to achieve. Without specific findings of fact it is difficult, if not impossible, upon review to determine whether the administrative agency has acted arbitrarily or within its powers.

Dr. Johnson also relies upon *Simms v. Angel*,[5] in part, as follows:

It is our opinion that the circuit judge was quite correct in holding that this

---

2. Ky.App., 710 S.W.2d 862, 866 (1986).

3. *See also Kirk v. Jefferson County Medical Society, supra* at 423.

4. Ky., 491 S.W.2d 837, 839 (1973).

5. Ky.App., 513 S.W.2d 176, 177 (1974).

recitation of an ultimate fact, which was the statutorily provided standard to be applied, was insufficient to withstand judicial review. The demonstrable vice in the board's action in *Marshall* and in this case is merely one of degree. In both cases considerations of due process require the conclusion that the administrative body's failure to make findings of basic evidentiary facts leaves without support the granting of a permit and is fatal on judicial review.

In our view, the ultimate fact that was to be determined in the case *sub judice* was whether Dr. Johnson met the requirements for medical staff membership as provided for in the Bylaws. The particular reasons for the denial of Dr. Johnson's application for appointment to the medical staff have been set out above in the quote from the Executive Committee's report dated May 4, 1993. We believe that these findings were sufficient to support the ultimate conclusion that membership be denied. From our review of the Bylaws and the Executive Committee's decision, the factual bases underlying the decision to deny membership were as follows: (1) Dr. Johnson agreed and fully understood "that any significant misstatements in or omissions from [ ] his application constitutes cause for refusal of [ ] his application, or for disciplinary action as provided in these Bylaws." [Article III, Section 3]; (2) Dr. Johnson was required to provide documentation of "ability to work and cooperate with the Hospital personnel and staff members[.]" [Article III, Section 2.A.5.d.]; and (3) Dr. Johnson was required to be licensed by the Kentucky Board of Medical Licensure and he was required to completely fill in all parts of the application [Article IV, Section 1.G.]. We hold as a matter of law that the circuit court was not clearly erroneous in ruling that the findings of fact made by the hospital in denying Dr. Johnson staff privileges were legally sufficient and supported by substantial evidence.

Dr. Johnson also claims that he was denied due process because of "[t]he lack of properly presented and authenticated 'evidence'[.]" Dr. Johnson refers to various information that was presented to the Hearing Committee that he claims failed to meet the due process requirement of substantial evidence. He alleges that various evidence was inadequate because "it is rank hearsay with no supporting documentation[;]" "[s]uch [evidence] was a complete and total lie [;]" "[t]his record contains many more examples of the truth of the issues being twisted or totally distorted[;]" and "[n]either Dr. Olsen nor Dr. Stivers were ever sworn in as witnesses."

In *Kirk, supra,* this Court stated:

[T]he proceedings are not required to be as formal or technical as in a trial at law, and it is sufficient that the constitution and by-laws are substantially observed, notice given to accused with opportunity to be heard, and judgment pronounced from proper motives and in good faith. 70 C.J.S. *Physicians and Surgeons* § 80. Appellee's Articles of Incorporation and By–Laws, Chapter 4, Article G, and the sections thereafter enumerated were correctly found by the trial court to be substantially, if not strictly, complied with.

Appellant has asserted that he was not accorded a due process hearing. From the record we have determined that appellant was given notice of all investigative and disciplinary proceedings, apprising him of the time, place and subject of inquiry, and of his right to appear with counsel, and, additionally, he was furnished the names of all witnesses and proposed evidentiary documents as well as a list of the factual allegations set forth in written form. We find no abridgement of due process, and appellant was afforded more then rudimentary due process. *Duby v. American College of Surgeons,* 468 F.2d 364 (7th Cir.1972).[6]

---

6. *Id.* at 422–23.

■ We have previously quoted the circuit court's discussion of the law relative to the Committee being the appropriate body "to determine the credibility of witnesses and [to] pass on the weight of the evidence[;]" and the circuit court's finding that "the Committee has provided Dr. Johnson with due process in the proceedings[.]" We agree with the circuit court's ruling and hold that the proceedings met the minimum due process requirements.

■ As his final due process issue, Dr. Johnson contends that there was a "lack of identifiable applicable 'standards'[.]" More particularly, Dr. Johnson asks, "where is the 'dividing line' between an acceptable ability to work with others, as opposed to a level of ability this is not acceptable?" In expounding upon his due process argument, Dr. Johnson observes that "in the approximate four months (December, 1992 to March, 1993) when Dr. Johnson held temporary privileges at Audubon Hospital and otherwise was functioning at the hospital, there were zero complaints from hospital personnel and staff members, and none were put into evidence in the hearing *record.*" He argues that the Hearing Committee should have adopted a "fair standard" and cites *Sussman v. Overlook Hospital Assoc.,*[7] *McElhinney, supra;* and *Rosner v. Eden Township Hospital District.*[8] Dr. Johnson then provides a four-page summary of the evidence concerning his ability to work with others. Since there is clearly substantial evidence before the Hearing Committee to support its finding that Dr. Johnson had a "[p]rolonged history of inability to work well with others[,]" our review is limited to determining whether this standard met the minimum due process requirements.

■ Dr. Johnson argues that before a doctor's inability to work well with others is serious enough to disqualify him from staff privileges that the doctor's behavior must adversely affect health care delivery. We do not believe that the due process requirement is that high; and hold that if the doctor's inability to work well with others in the hospital setting is established by substantial evidence, then the fact-finder can rely upon that evidence in finding that the doctor has failed to meet his burden of establishing his ability to work and cooperate with the hospital personnel and staff members. We recognize that such judgments are subjective; however, a subjective judgment grounded in evidentiary fact is not arbitrary.

Dr. Johnson contends that "there is no cited or asserted incident where [his] conduct was related to any event wherein it was *his* conduct that comprised patient care. In fact, quite the opposite was true." Again, we hold that a hospital can show other behavior by a doctor that evidences an inability to work well with others, short of behavior that directly adversely affects a patient, that is sufficient to meet the due process standard. In this case, we believe there is substantial evidence of record to support such a finding.

Accordingly, the opinion and order of the Jefferson Circuit Court is affirmed.

TACKETT, Judge, concurs.

DYCHE, Judge, concurs in result only and files separate opinion.

DYCHE, Judge, concurring in result:

I would concur with the result reached by the majority if we reached the merits of the case. The motion to dismiss should be granted, however, as the proper parties are not before the court. It is not the obligation of the putative appellees to "plead themselves into court." The doctrine of "substantial compliance" has no application here. In order to receive ap-

---

**7.** 92 N.J.Super. 163, 182, 222 A.2d 530 (1967).

**8.** 58 Cal.2d 592, 25 Cal.Rptr. 551, 554, 375 P.2d 431, 434 (1962).

pellate relief, the necessary parties must be named in the Notice of Appeal, which, despite its name, is a jurisdictional document, not a mere means of giving notice. *Blackburn v. Blackburn,* Ky., 810 S.W.2d 55 (1991) is an unfortunate aberration in our appellate law and should be overruled.