**KENTUCKY RETIREMENT SYSTEMS, Appellant,**

v.

**Nancy HEAVRIN, Appellee.**

**No. 2004–CA–000238–MR.**

Court of Appeals of Kentucky.

Feb. 4, 2005.

Discretionary Review Denied by Supreme Court Oct. 12, 2005.

Brown J. Sharp, II, Louisville, KY, for appellant.

Christina Heavrin, James K. Murphy, Louisville, KY, for appellee.

Before COMBS, Chief Judge; GUIDUGLI and SCHRODER, Judges.

## OPINION

GUIDUGLI, Judge.

Kentucky Retirement Systems (hereinafter "the Systems") appeals from an order of the Franklin Circuit Court that granted Nancy Heavrin's appeal from an administrative proceeding and overruled the Systems's final order. In doing so, the circuit court determined that the Systems's final order denying Heavrin's appeal and adopting the Systems's hearing officer's recommended order should be reversed. The effect of this order is that Heavrin will be permitted to purchase five years of non-qualified service credit at a price reflective of her actual salary and the Systems must refund any excess payment made by her, plus interest. We affirm.

The facts of this case are not in serious dispute; however, the interpretation of the applicable statute is. The facts disclose that at the time of her request to purchase the non-qualified service credit, Heavrin was employed by the Oldham County Health Department with twenty years of service in the Systems. While employed with the Health Department, Heavrin worked eight hour days, three days per week. Her rate of pay was $25.26 per hour. The Systems requested written verification from the Health Department as to Heavrin's specific rate of pay and regular hours worked. In reply, the Health Department verified that as of August 30, 1999, Heavrin's rate of pay was $25.26 per hour and that she worked 24.5 hours per week. Based upon this information, the Systems calculated that Heavrin could purchase the five years of non-qualified service credit for $18,041.70. The purchase amount was based upon an annual salary of $31,813.94 per year. It appears that the annual salary was calculated in the following manner: $25.26 × 8 hours per day × 3 days per week × 52 weeks per year. Heavrin purchased the five extra years of service on September 6, 1999.

Following an audit of her account, Heavrin was notified by the Systems that her final compensation had been erroneously determined and that to purchase the service time would cost her a total of $26,202.10. This resulted in her owing an additional $8,160.40. According to the Systems, the audit revealed that the cost to purchase the service time should have been based on her working full-time not part-time. As such, her annual salary was determined to be $52,540.50 ($25.26 × 8 hours per day × 260 days) and not her actual salary of $31,813.94. Heavrin contested the method of determining her annual salary but paid the additional amount allegedly owed and subsequently retired.

Heavrin continued to contest the additional funds paid and the matter was set for a hearing before Paul F. Fauri, a hear-

ing officer with the Systems. Following discovery and briefing of the issues, the parties agreed to forego an evidentiary hearing and submitted the matter to Fauri. On September 5, 2000, Fauri filed his report and recommended order. Fauri determined that the Systems had followed all applicable statutes and regulations and upheld the Systems's calculation of Heavrin's annual salary and total cost to purchase the additional service. Heavrin filed exceptions to the finding and order, which were dismissed in a letter from the Deputy Commissioner of Benefit Services, William P. Hanes, on October 13, 2000.

Heavrin next filed a petition for judicial review in the Franklin Circuit Court. On May 16, 2001, Judge Roger L. Crittenden entered an opinion and order which granted Heavrin's petition and ordered "the Systems to calculate the appropriate purchase price based upon a 52 week conversion rate." In his order the Franklin Circuit Judge reviewed KRS 61.510(15) and determined that Heavrin's annual salary was actually $32,181.24, not the $52,540.80 the Systems had determined. The court stated:

> K.R.S. 61.510( [15] ) provides:
>
> [t]he following equivalents shall be used to convert the rate to an annual rate: two thousand eighty (2,080) hours for eight (8) hour workdays, nineteen hundred fifty (1,950) hours for seven and one-half (7½) hour workdays, two hundred sixty (260) days, fifty-two (52) weeks, twelve (12) months, one (1) year.
>
> The Respondent's application of the statute authorized and mandated the annualizing of the Petitioner's hourly rate resulting in a calculation derived from a yearly salary of $52,540.80, a significantly larger amount than Heavrin's actual yearly salary of $32,181.24. This calculation is illogical because its basis does

not contemplate the Petitioner's actual earnings. In the interest of fairness, the Systems must base its calculations on the actual earnings of Heavrin by using a 52 week conversion rate. K.R.S. 61.510( [15] ) explicitly provides the Systems several alternative conversion rates permitting them the ability to maximize the purchase price for non-qualified service credit based upon a client's actual income rather than speculative unearned income. The integrity of K.R.S. 61.510( [15] ) will not be jeopardized under the present circumstances, given the fact Heavrin has retired and does not seek employment at a forty hour a week position. In this particular instance it was appropriate to use the 52 week standard as provided in K.R.S. 61.510( [15] ) to formulate the purchase price.

The Systems appealed from that order. On appeal, this Court granted a motion to remand based upon the recently rendered case of *Baker v. Commonwealth of Kentucky, Kentucky Retirement Systems,* 50 S.W.3d 770 (Ky.App.2001). The *Baker* case held that the Board of Trustees of the Systems had no authority to delegate its authority to enter a final order to a subcommittee of the Board, at least not where the subcommittee constituted less than a quorum of the entire Board. This Court then held that an order signed by the subcommittee was not a "final order from which an appeal could be taken." *See* KRS 13B.030(1); KRS 61.665(4). This Court vacated the judgment of the Franklin Circuit Court and the order entered by the Administrative Appeals Committee of the Board of Trustees of the Systems and remanded the matter back to the Board of Trustees for entry of a final decision.

On remand, the Board determined that an additional hearing was necessary and referred the matter again to hearing offi-

cer Fauri. Following additional briefing and an evidentiary hearing, Fauri rendered his report and recommended order on June 14, 2002. Fauri again held that the Systems had followed the law and properly determined that Heavrin's annual salary should be based upon her hourly rate of pay ($25.26), times the hours worked per day (8), then multiplied by the 260 days reflective of a full-time employee (40 hours per week).[1] In his recommended order, Fauri made the following findings in making his determination:

The position of the Claimant in this matter is that her actual salary was not used in the calculation because the Systems calculated her salary at a rate of 40 hours per week at her hourly rate of $25.26, when in fact she was working only 24.5 hours a week and that this was the information provided by the Oldham County Health Department. The calculations result in approximately a $20,000 difference. That is, Ms. Heavrin was basically earning $32,000 a year for her approximately 106 hours of work a month, but based on the calculation on a 40–hour a week basis, she would be making about $52,000 a year. Obviously, in actuality, she did not receive the $52,000 salary, but the Systems takes the position that this was her current rate of pay and, as Mr. Gagel [an actuary] testified and has set forth in his letter (Exhibit 12), the Systems was obligated to utilized (sic) the higher of the member's current rate of pay, final rate of pay, or final compensation in order to protect the Retirement Systems from possible manipulation by the member.

In addition, this case does not appear to have been a manipulation in any way by Ms. Heavrin due to the fact that, after she received her additional five years of service, she retired as of December of 1999. There is also the fact that the purchase of this additional time resulted in her being able to retire and not having to wait until age 55. Mr. Gagel, in both his testimony and letter, indicated that Ms. Heavrin would also be receiving additional benefit by the ability to retire prior to age 55. In his calculations, he determined that this value would be approximately $90,000. The assumption was made that, if she had terminated as of December 1999, she would have to wait until she was age 55 to retire and the present value as of December 1999 without the purchase would be $22,900 and after the purchase was $113,800. Mr. Gagel made it clear that the methodology must reflect the potential liability to the Retirement Systems. Therefore, that is why the Systems has utilized the purchase of service set forth for military purchase by Samuel Rosenbloom in the March 12, 1974 letter to the Kentucky Employees Retirement Systems General Manager, George R. Arvin. (Exhibit 10, p. 29).

In addition to the testimony of Mr. Gagel, Ms. Rebecca Stephens testified and indicated in her testimony that the Systems was obligated to use the calculation of $25.26 an hour times eight hours times 260 days as set forth on Exhibit 5. Basically, the information as to Ms. Heavrin's rate of pay was hourly and it was not provided as 5 hours per day per week, but simply as a total number of hours per week. As noted above, Ms. Heavrin takes the position that the Systems should have used her hourly rate of $25.26 times 8 hours a day

1. It should be noted that the Systems audited Heavrin's account prior to this hearing and determined it had made another calculation error (it used the wrong rate factor) which resulted in Heavrin owing an additional $3,593.80. Heavrin does not contest that the wrong rate factor was used and this is not an issue on appeal.

3 days a week to arrive at her weekly income, and multiply this figure by 52 weeks to arrive at her current rate of pay. As previously noted, the Systems has taken the position that her hourly rate of pay should be times 8 hours and then 260 days a year. This is the result of the $20,000 difference indicated above.

The Claimant further argues that the action herein by the Agency is in violation of Section 2 of the Kentucky Constitution, that it fails to follow statutory construction, and that the determination is arbitrary, capricious, as well as a denial of equal protection and, therefore, the method applied to establish the cost of the service is unconstitutional. Of course, the Systems takes just the opposite position and further states that it has to be actuarially sound and must follow the statutory mandate.

In reviewing this matter, first and foremost, the statute which permits Ms. Heavrin to purchase this non-qualified service is KRS 61.552(26). The statute specifically provides, after setting forth that the employee must have 240 months of service credit and that the service is not otherwise purchasable under any provisions of Chapters 16, 61 or 78 as follows:

> ... The purchase price of the retirement service credit shall be calculated and paid for *based on the full actuarial cost as determined by the Systems.* [Emphasis in original].

The Systems has determined that the calculation should be based on the current rate of pay, final rate of pay, or final compensation at the time of the date of purchase, *whichever is greatest.* [Emphasis in original]. Accordingly, the Systems has performed the calculations in this matter and determined that the Claimant's final compensation would be less than the current rate of pay, that her final rate of pay would be less than her current rate of pay, and that her current rate of pay, as set forth in KRS 61.510(25), would be the member's actual hourly, daily, weekly, bi-weekly, monthly or yearly rate of pay converted to an annual rate as defined in the final rate of pay.

Obviously, the current rate of pay would be higher than Ms. Heavrin's final compensation and her final rate of pay due to the fact that her current rate of pay is to be converted to an annual rate based on the factors that have been set forth under final rate of pay, KRS 61.510. Due to the fact that Ms. Heavrin did not work a full work week, the Systems was obligated to calculate her salary on a yearly basis, not on her actual earnings. Accordingly, while she argues that the 24.5 hours at $25.26 is weekly, the Systems was obligated to convert her income into an annual current rate of pay. Certainly, this seems harsh. If in fact the Oldham County Health Department had reported her income as working three days a week for a total of eight hours a day, and that she had a weekly income of $25.26 times 3 times 8, and that she did not work any more, or could not work any more, then that would be both her final rate of pay and her current rate of pay. However, it is clear that her income was not reported this way, and further, as set forth on Exhibit 13, it was indicated that Exhibit 4 would not be changed to reflect a weekly income and that Ms. Heavrin could work more than the 100 hours a month. Therefore, her income was reported as an hourly income, as Ms. Stephens testified, and even though calculations could be made to attempt to show a weekly income, it was not so reported, and accordingly, the calculations for current rate of pay was based on an hourly

rate annualized on a 40–hour–a–week basis.

As the undersigned Hearing Officer has indicated in the previous Report and Recommended order, Ms. Heavrin's benefits would not change if the $32,000 figure or the $52,000 figure was used. The only issue is if she would be refunded about $8,000. The Systems has made it perfectly clear that they must comply with the law and, further, they must ensure the integrity of the fund and no refund is due.

Certainly, the arguments of Ms. Heavrin as to her situation being separate and distinct from other hourly employees are understandable. However, the Systems must take the information as provided and apply the proper actuarial bases for determining purchase of non-qualified service credit. Clearly, KRS 61.552(26) mandates that the Systems determine the purchase price based on the full actuarial cost. The testimony of Stephen Gagel clearly indicates that the Systems has made a proper determination to obtain the full actuarial cost. Any other calculation would be contrary to this statute.

Heavrin filed exceptions to the recommended order, but the Board of Trustees of the Systems again adopted the hearing officer's recommended order as its final order. Heavrin thereafter, again, petitioned the Franklin Circuit Court for judicial review. This time the case was assigned to Circuit Judge William L. Graham. After reviewing the petition, the Systems's response, the administrative record and the parties' briefs, Judge Graham entered his opinion and order on January 26, 2004. In its order, the Franklin Circuit Court granted Heavrin's appeal and reversed the Systems's final order. The court further ordered the Systems to "1) calculate [Heavrin's] pur-chase price to reflect her actual income, and 2) refund [Heavrin's] excess payment plus interest." This appeal by the Systems followed.

In his opinion, Judge Graham discussed Heavrin's cost to purchase her non-qualified service credit in the following terms:

**B. Cost Calculation**

The Court overrules the Respondent's final order because [the Systems] misapplied the statutory formula for calculating the cost of [Heavrin's] non-qualified service credit. See KRS 13B.150.

KRS 61.552(26) states that "[t]he purchase price for the retirement service credit shall be calculated and paid for based on the full actuarial cost as determined by the system." To derive the purchase price, [the Systems] uses the greatest of the employee's "current rate of pay," "final rate of pay," or "final compensation," as the terms are defined in KRS 61.510. See KRS 61.5525 (codified in 2001 but followed by [the Systems] since 1974). [The Systems] then multiplies the number by a rate factor determined by actuaries. In this instance [the Systems] used the "current rate of pay," which "means the member's actual hourly, daily, weekly, biweekly, monthly, or yearly rate of pay converted to an annual rate as defined in final rate of pay." KRS 61.510(25). The definition of "Final rate of pay" states:

the following equivalents shall be used to convert the rate to an annual rate: two thousand eighty (2,080) hours for eight (8) hour workdays, nineteen hundred fifty (1,950) hours for seven and one-half (7–1/2) hour workdays, two hundred sixty (260) days, fifty-two (52) weeks, twelve (12) months, one (1) year.

KRS 61.510(15). The "current rate of pay" definition also requires the employ-

er to certify the employee's rate, and [Heavrin's] employer certified her rate as $25.26 an hour for 24.5 hours per week. *See* KRS 61.510(25). The facts also suggest that [Heavrin] worked three days a week for eight hours each day.

[The Systems] erroneously calculated [Heavrin's] "current rate of pay." [The Systems] multiplied [Heavrin's] hourly wage, $25.26, by 2080 to yield about $52,000. This number is supposed to represent [Heavrin's] annual salary, but [Heavrin] in reality only made about $32,000 a year. The calculation is illogical and unfair to [Heavrin] because it does not contemplate her actual earnings. The 2080 number, used to annualize [Heavrin's] salary from an hourly wage, is equivalent to 260 days times 8 hours a day. The problem is that [Heavrin] did not work 260 days each year, which is the equivalent of five days a week. Since she worked 3 days a week, she only worked 156 days a year.

KRS 61.510(15) and KRS 61.510(25) give [the Systems] several options for calculating the base for the "current rate of pay," such as hourly or weekly rate, and for annualizing the base. [The Systems] originally derived the base by multiplying $25.26 per hour times 8 hours per day times 3 days per week. The agency then annualized that base by multiplying it by 52 weeks per year. This equation yielded approximately $32,000, about [Heavrin's] actual salary, and seems more appropriate to formulate the purchase price.

[The Systems] contends that the actuarial soundness of the purchase credit system will be jeopardized if [Heavrin] does not pay the higher amount. [The

Systems] is concerned that employees will take advantage of the system by purchasing credit when their salary is low and subsequently take a higher salary. That worry is unfounded here because [Heavrin] retired after she made the purchase and did not subsequently seek a higher salary.

We agree with the circuit court that the Systems misapplied the statutory formula for calculating the cost of Heavrin's non-qualified service credit.

■■■ The circuit court correctly noted the standard of review applicable to an appeal from an administrative agency. In citing *Kentucky Unemployment Insurance Commission v. King*, 657 S.W.2d 250 (Ky. App.1983), the circuit court stated that the function of the court in an appeal from an administrative agency is to ensure that the agency did not act arbitrarily and that its decision is based on substantial evidence in the record and that the agency did not apply the wrong rule of law.[2] Substantial evidence is defined as evidence that "when taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men."[3] As to the issue of whether an agency acts in an arbitrary manner, the court, citing *Bourbon County Bd. of Adj. v. Currans*, 873 S.W.2d 836, 838 (Ky.App. 1994), held that an agency acts arbitrarily when it denies relief to a party and "the record compels a contrary decision in light of substantial evidence therein."

In *Johnson v. Galen Health Care, Inc.*, 39 S.W.3d 828 (Ky.App.2001), this Court, again, addressed the standard of review from both the circuit court and appellate court standpoint. In *Johnson*, 39 S.W.3d at 833, this Court stated:

2.  *See also, American Beauty Homes Corp. v. Louisville & Jefferson Cty. Planning and Zoning Commission*, 379 S.W.2d 450 (Ky.1964).

3.  *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 308 (Ky.1972).

Our standard of review of a circuit court's review of an administrative action was set forth in *Jones. v. Cabinet for Human Resources,* [Ky.App., 710 S.W.2d 862, 866 (1986)], as follows:

> In an appeal of an administrative action by an agency, the circuit courts are to provide review, not reinterpretation. *Kentucky Unemployment Insurance Commissioner v. King,* Ky. App., 657 S.W.2d 250 (1983). Thus, when substantial evidence exists in the record to support an administrative agency's action, the circuit court has no authority to overturn it. *Kentucky State Racing Commission v. Fuller,* Ky., 481 S.W.2d 298 (1972). Our task is to determine whether or not the circuit court's findings upholding the Cabinet are clearly erroneous. CR 52.01. [*See also Kirk v. Jefferson County Medical Society,* Ky.App., 577 S.W.2d 419 (1978)].

Thus, at this level of appellate review, Dr. Johnson has the very high burden as to the factual issues of showing that the circuit court was clearly erroneous in finding that the Executive Committee's decision was supported by substantial evidence.

■ In this case, the high burden of showing that the Systems's decision was not supported by substantial evidence was placed upon Heavrin. We believe Heavrin has successfully carried that heavy burden by showing that the Systems's decision was not supported by substantial evidence nor legally sound. *See* KRS 13B.150. Heavrin contended and the circuit court agreed that the Systems had misapplied the statutory formula for calculating the cost of her non-qualified service credit. We agree.

The parties agree that Heavrin's cost to purchase the service credit is to be based upon the "final rate of pay." Final rate of pay is defined in KRS 61.510(15) as:

> "Final rate of pay" means the actual rate upon which earnings of an employee were calculated during the twelve (12) month period immediately preceding the member's effective retirement date, including employee contributions picked up after August 1, 1982, pursuant to KRS 61.560(4). In the case of members of the General Assembly, the "final rate of pay" shall be the creditable compensation. The rate shall be certified to the system by the employer and the following equivalents shall be used to convert the rate to an annual rate: two thousand eighty (2,080) hours for eight (8) hour workdays, nineteen hundred fifty (1,950) hours for seven and one-half (7–1/2) hour workdays, two hundred sixty (260) days, fifty-two (52) weeks, twelve (12) months, one (1) year.

The Systems contends that since Heavrin worked 8 hour days, it must calculate her final rate of pay at 8 hours times 2,080 hours or 260 days. This, however, does not reflect her actual hours or days worked. Her employer, the Oldham County Health Department, certified that she worked an 8 hour day but only 24.5 hours per week. The Systems verified this information and knew that Heavrin was a permanent part-time employee working only 100 hours per month and her yearly salary was approximately $32,000 per year. The Systems's first calculation was based upon this information. It was only upon review that the Systems recalculated Heavrin's cost to be based upon the mythical $52,000 annual salary. The Systems claims this figure must be used because the cost to purchase the service time must be based on the full actuarial cost as determined by the Systems. While this is certainly a correct statement of the law, the testimony before the hearing officer does not support

the Systems's method of calculating the costs in this particular case.

The hearing officer made the following findings on this issue:

> Obviously, the current rate of pay would be higher than Ms. Heavrin's final compensation and her final rate of pay due to the fact that her current rate of pay is to be converted to an annual rate based on the factors that have been set forth under final rate of pay, KRS 61.510. Due to the fact that Ms. Heavrin did not work a full work week, the Systems was obligated to calculate her salary on a yearly basis, not on her actual earnings. Accordingly, while she argues that the 24.5 hours at $25.26 is weekly, the Systems was obligated to convert her income into an annual current rate of pay. Certainly, this seems harsh. If in fact the Oldham County Health Department had reported her income as working three days a week for a total of eight hours a day, and that she had a weekly income of $25.26 times 3 times 8, and that she did not work any more, or could not work any more, then that would be both her final rate of pay and her current rate of pay. However, it is clear that her income was not reported this way, and further, as set forth on Exhibit 13,[4] it was indicated that Exhibit 4 would not be changed to reflect a weekly income and that Ms. Heavrin could work more than the 100 hours a month. Therefore, her income was reported as an hourly income, as Ms. Stephens testified, and even though calculations could be made to attempt to show a weekly income, it was not so reported, and accordingly, the calculations for current rate of pay was based on an hourly rate annualized on a 40–hour–a–week basis.

> As the undersigned Hearing Officer has indicated in the previous Report and Recommended Order, Ms. Heavrin's benefits would not change if the $32,000 figure or the $52,000 figure was used. The only issue is if she would be refunded about $8,000. The Systems had made it perfectly clear that they must comply with the law and, further, they must ensure the integrity of the fund and no refund is due.

> Certainly, the arguments of Ms. Heavrin as to her situation being separate and distinct from other hourly employees are understandable. However, the Systems must take the information as provided and apply the proper actuarial bases for determining purchase of non-qualified service credit. Clearly, KRS 61.552(26) mandates that the Systems determine the purchase price based on the full actuarial cost. The testimony of Stephen Gagel clearly indicates that the Systems has made a proper determination to obtain the full actuarial cost. Any other calculation would be contrary to this statute.

> Accordingly, it is again the recommendation that the administrative determination be affirmed.[5]

In reviewing the hearing officer's report, we first note that the Systems and the hearing officer were given information of Heavrin's actual hours worked. There is no doubt that both knew that Heavrin was a permanent part-time employee working only 100 hours per month and had done so for a significant period of time. However,

---

4. Exhibit 13 is the Kentucky Retirement Systems's folder comments for Heavrin. We do not believe this exhibit supports the hearing officer's finding that the Systems was obligated to use the $50,000 annual salary.

5. Hearing Officer's Report and Recommended Order of June 14, 2002, pp. 6–8.

each ignored this information in reaching its decision as to Heavrin's actual hours worked. Both knew that Heavrin's actual salary was approximately $32,000, not the $52,000 used to calculate her cost to purchase the service time. Both admitted that her retirement benefits would be based upon the $32,000 actual salary and not the $52,000 fictional figure. Both admitted that the actual actuarial cost of any other person working 24.5 hours per week or 100 hours per month and earning the same hourly wage as Heavrin would be based upon $32,000. It did not matter if that individual worked 5 hours, 5 days per week or 4 hours, 6 days per week or any other hours/days combination that totaled 24.5 per week or 100 hours per month. The argument that if one worked an 8 hour day, then the cost must be based on full-time annual salary is ridiculous. If the system is actuarially sound under similar fact patterns (any combination equaling 24.5 hours per week or 100 hours per month), then it is certainly actuarially sound in this case and reliance upon the $52,000 full-time annual salary is unfounded.

Having thoroughly reviewed this case, the Franklin Circuit Court's opinion and order granting Heavrin's appeal is affirmed. The Systems's determination that purchase of non-qualified service time must be based on the full actuarial cost as determined by the system is correct. However, in this case it erred both factually and legally in basing the purchase cost upon a full-time annual salary when Heavrin was employed as a permanent part-time employee.

ALL CONCUR.