RENDERED:  OCTOBER 17, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0483-MR

LEXINGTON-FAYETTE URBAN
COUNTY HUMAN RIGHTS
COMMISSION                                                                    APPELLANT


v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE JULIE M. GOODMAN, JUDGE
ACTION NO. 22-CI-00762


CARRIE SALTER AND
COMMONWEALTH OF KENTUCKY,
KENTUCKY UNEMPLOYMENT
INSURANCE COMMISSION                                                APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  KAREM, MCNEILL, AND TAYLOR, JUDGES.

MCNEILL, JUDGE:  This is an unemployment insurance benefits case.  Beginning

in 2019, Carrie Salter (Salter), was employed by the Lexington-Fayette Urban

County Human Rights Commission (HRC).  Her employment was terminated in

January 2021. She filed for unemployment benefits, which were initially approved.

HRC appealed the benefits award to an Unemployment Insurance Referee. A hearing was held, and the presiding Referee denied Salter benefits on the purported basis that she was discharged for misconduct. Salter appealed to the Kentucky Unemployment Insurance Commission. The Commission reversed the Referee and reinstated Salter's unemployment benefits. HRC appealed to the Fayette Circuit Court, which affirmed. HRC filed a motion to Alter, Amend, or Vacate that decision, which was denied. HRC appeals to this Court, from that order, as a matter of right.[1] HRC's sole argument on appeal is that Salter was terminated for misconduct, thus making her ineligible for unemployment benefits. For the following reasons, we affirm.

"As the fact-finder, the [Commission] has the exclusive authority to weigh the evidence and the credibility of the witnesses." *Thompson v. Kentucky Unemployment Ins. Comm'n,* 85 S.W.3d 621, 626 (Ky. App. 2002). Appellate review of the Commission's decision proceeds as follows:

> In reviewing an administrative decision, a circuit court
> must determine whether the agency's decision was based

---

[1] HRC's Notice of Appeal omits any reference to circuit court's opinion affirming the Commission. *See* Kentucky Rules of Appellate Procedure (RAP) 2(B)(2)(b). Nevertheless, we will review the circuit court's decision opinion on the merits. *See Johnson v. Smith*, 885 S.W.2d 944, 950 (Ky. 1994) ("Excepting for tardy appeals . . . we follow a rule of substantial compliance.").

upon substantial evidence. *Kentucky Commission on Human Rights v. Fraser*, 625 S.W.2d 852 (Ky. 1981). *See also Kentucky Retirement Systems v. Heavrin*, 172 S.W.3d 808 (Ky. App. 2005). Substantial evidence has been defined as evidence which "has sufficient probative value to induce conviction in the minds of reasonable men." *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972). The circuit court's role is to review the administrative decision, not to reinterpret or reconsider the merits of the claim. *Kentucky Unemployment Insurance Commission v. King*, 657 S.W.2d 250, 251 (Ky. App. 1983). If the record contains substantial evidence supporting the agency's decision, the circuit court must defer to the administrative agency, even if conflicting evidence is present. *Fraser*, 625 S.W.2d at 856. *See also Bowling v. Natural Resources and Environmental Protection Cabinet*, 891 S.W.2d 406 (Ky. App. 1995).

On appeal to this Court, "[o]ur task is to determine whether or not the circuit court's findings upholding the [administrative decision] are clearly erroneous. CR[2] 52.01." *Jones v. Cabinet for Human Resources*, 710 S.W.2d 862, 866 (Ky. App. 1986). Thus, at this level of review, [Appellant] has the burden of demonstrating that the trial court was clearly erroneous in finding that the Commission's decision was supported by substantial evidence.

*Runner v. Commonwealth*, 323 S.W.3d 7, 10 (Ky. App. 2010), *as modified* (Sep. 24, 2010). It is also important to consider that "[t]he law is well established that we review the unemployment insurance act ("Act") liberally in favor of applicants." *Kentucky Unemployment Ins. Comm'n v. Duro Bag Mfg. Co.*, 250

---

[2] Kentucky Rules of Civil Procedure.

S.W.3d 351, 353 (Ky. App. 2008), *abrogated on other grounds by Kentucky Unemployment Ins. Comm'n v. Cecil*, 381 S.W.3d 238 (Ky. 2012). We now return to the facts at issue in the present case.

The Referee denied benefits on the basis that Salter was disqualified under KRS[3] 341.370(1)(b). That provision states, in relevant part, "[a] worker shall be disqualified from receiving benefits for the duration of any period of unemployment with respect to which . . . [she] has been discharged for misconduct or dishonesty connected with his most recent work[.]" *Id.*

> "Discharge for misconduct" as used in this section shall include but not be limited to, separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge; knowing violation of a reasonable and uniformly enforced rule of an employer; unsatisfactory attendance if the worker cannot show good cause for absences or tardiness; damaging the employer's property through gross negligence; refusing to obey reasonable instructions; reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours; conduct endangering safety of self or co-workers; and incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction, which results in missing at least five (5) days work.

KRS 341.370(6). In its order reversing the Referee's denial of benefits, the Commission provided the following findings of fact:

---

[3] Kentucky Revised Statutes.

The claimant began work for the employer in Lexington, Fayette County, Kentucky on April 1, 2019. She worked as a full-time investigator, earning $29,980.57 per year in non-union employment. Her job was to investigate employment complaints for the employer under a contract with the Equal Employment Opportunity Commission (EEOC). The employer receives a significant portion of its annual funding through EEOC contract; the EEOC pays the employer for a pre-determined number of completed investigations based on previous year's productivity.

Based on her credentials when hired, the employer assumed that the claimant was competent and capable of performing the duties of her position. The employer trained the claimant by having her shadow Raymond Sexton, executive director, for approximately one year; however, the claimant continually had difficulty retaining and comprehending the required information. On September 9, 2019, the claimant was given a verbal warning for performance issues. On December 3, 2019, the claimant received a second disciplinary action for performance deficiencies discovered during an audit of her caseload.

When the Covid-19 pandemic began in March 2020, the claimant began working from home for the employer. Mr. Sexton communicated with the claimant because he became concerned that the employer was not going to be able to fulfill the EEOC's contract requirement of 70 completed investigations for the year. Mr. Sexton applied for and received a downward modification to the contract requirement from the EEOC, from 70 to 50 completed investigations for the year. Mr. Sexton made the claimant aware of the adjusted EEOC requirements and the claimant failed to fulfill those requirements.

The claimant was placed on a ninety-day performance improvement plan (PIP) on September 15, 2020, based on her repeated poor performance and was informed that

she was facing termination unless there was drastic improvement. On December 15, 2020, the claimant was granted leave under the Family and Medical Leave Act (FMLA), which caused Mr. Sexton to evaluate the claimant's caseload. While the claimant was on FMLA leave, Mr. Sexton found the claimant's caseload to be in a bad state of repair, with many cases being neglected. Additionally, he found the claimant failed to keep the case files in an organized manner, failed to accurately open and timestamp emails and documents, and made other procedural errors that affected case timelines.

The employer failed to meet the EEOC goal of 50 completed cases for 2020 and lost the EEOC contract which cost the employer over $29,600.00. On January 28, 2021, upon her return from FMLA leave, the claimant was discharged from the employment for poor work performance.

Salter's employment was not terminated for a reason provided under KRS 341.370(6). Accordingly, we may seek guidance from the common law definition of "misconduct" as established by *Boynton Cab Company v. Neubeck*, 296 N.W. 636 (Wis. 1941), and adopted in Kentucky by *Douthitt v. Kentucky Unemployment Insurance Commission*, 676 S.W.2d 472 (Ky. 1984). The *Boynton Cab* Court defined "misconduct" as:

> evincing such wilful [sic] or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere

-6-

inefficiency, unsatisfactory conduct, failure in good
performance as the result of inability or incapacity,
inadvertencies or ordinary negligence in isolated
instances, or good-faith errors in judgment or discretion
are not to be deemed "misconduct" within the meaning of
the statute.

*Boynton Cab*, 296 N.W. at 640. *See also Runner*, 323 S.W.3d at 11 (concluding

that substantial evidence supported a finding that claimant was discharged from her

employment for misconduct because she was "**aware** of her responsibilities, was

**capable** of performing her duties, and had been **warned** of the consequences of

her actions") (emphasis added).  The Commission and the Fayette Circuit Court

relied on *Runner* when concluding that Salter was not capable of performing her

duties.[4]

In contrast, the record in the present case indicates that Salter was

unable of performing her duties.  As cited by the Commission and the circuit court,

Salter's supervisor, Mr. Sexton repeatedly testified during the hearing before the

benefits Referee that Salter lacked basic comprehension of the tasks required of

her, and that she was terminated for, in part, "inability to perform the essential

---

[4] *Runner* has been applied in at least two unpublished decisions where denial of benefits was
deemed appropriate based on a finding of misconduct.  *See Ebbs v. Kentucky Unemployment Ins.
Comm'n*, No. 2020-CA-0025-MR, 2020 WL 7640248, at *8 (Ky. App. Dec. 23, 2020); and
*Lindsey v. Kentucky Unemployment Ins. Comm'n*, No. 2009-CA-002384-MR, 2011 WL 255539,
at *5 (Ky. App. Jan. 28, 2011).  In both cases, claimants demonstrated behavior that was either
deliberate, intentional, or a substantial disregard for their employment duties.  And nothing in the
record indicated that they were unable to perform their duties.  We cite these two unpublished
cases only as instructive, and for comparative purposes only.  *See* Kentucky Rule of Appellate
Procedure 41(A)(3) and (A)(4).

functions of her position." We have considered HRC's arguments and authority and find them unpersuasive. *E.g.*, *City of Lancaster v. Trumbo*, 660 S.W.2d 954, 956 (Ky. App. 1983) (affirming denial of unemployment benefits where "substantial evidence in the record which indicates that the order to clean the public square in this case was within the appellees' ability to perform and would not result in any undue hardship and was, in essence, a reasonable request").

We hold that the Commission relied on substantial evidence and properly applied the law when it found that Salter had not been discharged for misconduct and, thus, the circuit court properly affirmed the Commission's decision. The decision of the Fayette Circuit Court is AFFIRMED.


ALL CONCUR.


BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Edward E. Dove                          Kimberly A. Grasberger
Lexington, Kentucky                     Frankfort, Kentucky